RELIANCE INSURANCE COMPANY *v.* AMERICAN
CASUALTY COMPANY OF READING,
PENNSYLVANIA
(15396)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued June 6—officially released July 30, 1996

*Jack G. Steigelfest*, with whom, on the brief, was *Constance L. Epstein*, for the appellant (plaintiff).

*Jon Berk*, with whom, on the brief, were *David B. Heintz* and *Christopher L. Slack*, for the appellee (defendant).

CALLAHAN, J. In accordance with Practice Book §§ 4147 and 4148, the trial court granted the parties' joint interlocutory motion for reservation of a question of law to the Appellate Court. We subsequently transferred the reservation to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The issue agreed upon by the parties and reserved by the trial court for advice is as follows: "In light of the provisions of Public Act No. 93-297, §§ 1 and [29], is an employee barred from recovering uninsured motorist coverage benefits against his employer's insurer in regard to a motor vehicle accident that occurred prior to the effective date of the [Public] Act?" We conclude that an employee is not so barred and answer "no" to the reserved question.

The following facts are not disputed. On January 13, 1989, Beverly Martin was involved in a two car accident with an uninsured vehicle in Danbury during the course of her employment as a driver for Jace Transportation (Jace). Martin suffered injuries in the accident, which was caused by the tortious conduct of the driver of the uninsured vehicle. As a result of her injuries, Martin

applied for, and received, workers' compensation benefits from Jace's workers' compensation carrier.

At the time of Martin's accident, Jace was covered by an insurance policy issued by the defendant, American Casualty Company of Reading, Pennsylvania, that included uninsured motorist coverage. At the same time, Martin also had a personal automobile insurance policy with the plaintiff, Reliance Insurance Company, that included uninsured motorist coverage. Martin sought and received compensation[1] for her injuries pursuant to the uninsured motorist coverage provided by her personal insurance policy issued by the plaintiff.

The plaintiff subsequently brought this action against the defendant seeking to recover the sum that the plaintiff had paid to Martin. At this early stage in the proceedings, the trial court has deemed the resolution of the reserved question sufficiently important to invoke the procedural mechanism of Practice Book § 4147, which allows this court or the Appellate Court to answer specific reserved questions if that answer is "reasonably certain to enter into the decision of the case" and if it appears that answering the question "would be in the interest of simplicity, directness and economy of judicial action."

In *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 610 A.2d 1257 (1992), we concluded that an employee injured in an automobile accident during the course of his or her employment who had received workers' compensation benefits was barred by General Statutes § 31-284 (a)[2]

---

[1] The matter went to arbitration, where the plaintiff was ordered to pay Martin $97,500 under the uninsured motorist provisions of Martin's personal automobile policy.

[2] General Statutes § 31-284 provides in pertinent part: "Basic rights and liabilities. Civil action to enjoin noncomplying employer from entering into employment contracts. Notice of availability of compensation. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sus-

from recovering "against a commercial insurance provider on an uninsured motorist insurance policy procured by [his or her] employer."[3] Id., 772. We reasoned that "[b]ecause of the central role that the exclusive remedy provision [of § 31-284 (a)] plays in our workers'

tained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[3] The plaintiff's asserted statutory basis for recovery in *Colman* was General Statutes § 38-175c (a) (2), the precursor to § 38a-336 (a) (2). At the time of the automobile accident in *Colman*, § 38-175c provided: "(a) Every [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations [as the insurance commissioner adopts], with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured and underinsured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle'

compensation law, an employee who can receive workers' compensation benefits is . . . barred from collecting under his employer's uninsured motorist coverage, whether that coverage is provided through self-insurance or through a commercial insurance policy." Id., 774.[4]

In 1993, in response to our decision in *Colman*, the legislature enacted No. 93-297 of the 1993 Public Acts (P.A. 93-297), § (1) (f) of which provides that "[n]otwithstanding subsection (a) of section 31-284, an employee of a named insured injured while occupying a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage." The effective date of this provision was January 1, 1994, several years after Martin's automobile accident. The plaintiff, however, asserts that § (1) (f) of P.A. 93-297 was intended by the legislature to serve as clarifying legislation and therefore must be viewed by this court as a declaration of the legislature's original intent regarding the interplay of the exclusivity provision of the workers' compensation laws and the uninsured motorist laws. See *Darak* v. *Darak*, 210 Conn. 462, 471, 556 A.2d 145 (1989).

"In principle, a statutory amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. *State* v.

means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."

[4] We need not decide today the effect of No. 93-297 of the 1993 Public Acts on those cases in which the employer is self-insured. See *Bouley* v. *Norwich*, 222 Conn. 744, 610 A.2d 1245 (1992) (companion case to *Colman* holding that an employee who has received workers' compensation benefits is precluded from receiving uninsured motorist benefits from his self-insured employer).

*Blasko*, 202 Conn. 541, 558, 522 A.2d 753 (1987); *Neyland* v. *Board of Education*, 195 Conn. 174, 180, 487 A.2d 181 (1985). [I]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . . *State* v. *Blasko*, supra, 558, quoting 1A J. Sutherland, [Statutory Construction (4th Ed. Sands 1986)], § 22.31, p. 276; see also *Shelby Mutual Ins. Co.* v. *Della Ghelfa*, 200 Conn. 630, 640, 513 A.2d 52 (1986). To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent. *State* v. *Blasko*, supra, 558." (Internal quotation marks omitted.) *Darak* v. *Darak*, supra, 210 Conn. 471.

An exchange on the floor of the House of Representatives between Representative Robert Farr and Representative Richard Tulisano, one of the sponsors of the House amendment that contained the provision at issue, provides uncontroverted support for the plaintiff's argument that § (1) (f) of P.A. 93-297 was enacted in direct response to our decision in *Colman*, and that the legislature, in enacting that provision, clarified its intent regarding an injured worker's ability to collect uninsured motorist benefits from his or her employer's automobile insurance carrier after having received workers' compensation benefits. Referring to § (1) (f), Representative Farr asked Representative Tulisano if that provision was "intended to be a recital of what [Representative Tulisano] believe[d] the current law [to be] or [was] that intended to be new legislation?" 36 H.R. Proc., Pt. 27, 1993 Sess., p. 9673. Representative Tulisano responded, "[I]n drafting this, it was intended to be a recital. *What we believe current law was and has been*, there is a recent Supreme Court case that may have interpreted differently and *I think it is a restatement of what we consider [the] law to be at this*

*point in time.*" (Emphasis added.) Id. Representative Farr then asked how the amendment would affect pending cases in which an employee injured in an automobile accident during the course of his or her employment was seeking to recover from his or her employer's automobile insurance carrier under the uninsured motorist provisions of the employer's policy. Representative Tulisano replied, "Since this law doesn't go into effect until, I think, January, 1994, I think what it would be is just, as I understand, I think the courts might look at this as [a] *restatement of legislative intent* and probably interpret the law [as] we always have been. I just note that *we have always understood that the workers' comp[ensation] carriers had a lien on any proceeds and therefore, they were always covered and I think a Supreme Court decision was just out of the ordinary in this area.*" (Emphasis added.) Id., p. 9674. Representative Farr then responded, "For the record, I would concur with Representative Tulisano's interpretation of what this language is intended to do." Id.

This legislative history persuades us that § (1) (f) of P.A. 93-297 was intended to be clarifying legislation and, as such, must be accepted as a declaration of the legislature's original intent pertaining to the interplay between the uninsured motorist provisions of General Statutes § 38a-336 and the workers' compensation exclusivity provision of § 31-284. See *Darak* v. *Darak*, supra, 210 Conn. 471. Consequently, we conclude that an employee is not barred from recovering uninsured motorist coverage benefits against his or her employer's insurer in regard to a motor vehicle accident that occurred prior to the effective date of P.A. 93-297.[5]

---

[5] "Even though the legislative clarification was prompted by a judicial decision that the legislature deemed mistaken, such a clarification does not constitute an invasion of judicial authority. Like legislatures, judges are fallible. The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we previously had interpreted a statute to confer. *Circle Lanes of Fairfield, Inc.* v. *Fay*, [195 Conn.

The reserved question is answered "no."

No costs will be taxed in this court to either party.

In this opinion PETERS, C. J., and BORDEN, NOR-COTT, KATZ and PALMER, Js., concurred.

BERDON, J., concurring. I agree with the opinion of the court today. It is clear from the legislative history that subsection (1) (f) of No. 93-297 of the 1993 Public Acts, which effectively reversed the decision in *CNA Ins. Co.* v. *Colman*, 222 Conn. 769, 610 A.2d 1257 (1992), was intended to clarify the legislature's original intent that employees not be barred from recovering uninsured motorist coverage benefits against their employer's insurer. As I stated in my dissent in *Bouley* v. *Norwich*, 222 Conn. 744, 765, 610 A.2d 1245 (1992), which I incorporated in my dissent in *CNA Ins. Co.* v. *Colman*, supra, 775: "[T]he exclusivity provision of the Worker's Compensation Act . . . does not bar an employee injured in an automobile accident while in the course of his employment from receiving uninsured motorist benefits from his [employer's insurer]. Any other result would simply confuse tort law with contract law—both of which, of course, are birds of a different feather."

---

534, 540–41, 489 A.2d 363 (1985)]; *Neyland* v. *Board of Education,* [195 Conn. 174, 180–85, 487 A.2d 181 (1985)]; *Lee* v. *Board of Education,* [181 Conn. 69, 75, 434 A.2d 333 (1980)]; *Tax Commissioner* v. *Estate of Bissell,* [173 Conn. 232, 245, 377 A.2d 305 (1977)]. *State* v. *Blasko,* supra, [202 Conn.] 558. Similarly, the legislature has the power to make evident to us that it did intend to provide a litigant with rights which we previously had interpreted a statute not to confer." (Internal quotation marks omitted.) *State* v. *Magnano,* 204 Conn. 259, 284, 528 A.2d 760 (1987).