## BARBARA EDELSTEIN *v.* DEPARTMENT OF PUBLIC HEALTH AND ADDICTION SERVICES
### (15390)

Callahan, C. J., and Berdon, Norcott, McDonald and Peters, Js.

Argued December 10, 1996—officially released April 29, 1997

*Steven L. Seligman,* for the appellant (plaintiff).

*Peter L. Brown,* assistant attorney general, with whom were *Karen H. Fritzinger,* assistant attorney

general, and, on the brief, *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. This appeal involves the interpretation of the physician-patient privilege statute, General Statutes § 52-146o.[1] The principal issues raised by this appeal are: (1) whether § 52-146o applies to medical records containing patient communications made before the effective date of the statute; and (2) if so, whether these records fall within the exception contained in § 52-146o (b) (3) for the disclosure of communications to a state agency in connection with its investigation of a licensed physician. The trial court ruled that the statute did not apply to the records at issue and, accordingly, ordered that the records be dis-

[1] General Statutes § 52-146o provides: "Disclosure of patient communication or information by physician, surgeon or health care provider prohibited. (a) Except as provided in sections 52-146c to 52-146j, inclusive, and subsection (b) of this section, in any civil action or any proceeding preliminary thereto or in any probate, legislative or administrative proceeding, a physician or surgeon, as defined in subsection (b) of section 20-7b, shall not disclose (1) any communication made to him by, or any information obtained by him from, a patient or the conservator or guardian of a patient with respect to any actual or supposed physical or mental disease or disorder or (2) any information obtained by personal examination of a patient, unless the patient or his authorized representative explicitly consents to such disclosure.

"(b) Consent of the patient or his authorized representative shall not be required for the disclosure of such communication or information (1) pursuant to any statute or regulation of any state agency or the rules of court, (2) by a physician, surgeon or other licensed health care provider against whom a claim has been made, or there is a reasonable belief will be made, in such action or proceeding, to his attorney or professional liability insurer or such insurer's agent for use in the defense of such action or proceeding, (3) to the Commissioner of Public Health for records of a patient of a physician, surgeon or health care provider in connection with an investigation of a complaint, if such records are related to the complaint, or (4) if child abuse, abuse of an elderly individual, abuse of an individual who is physically disabled or incompetent or abuse of an individual with mental retardation is known or in good faith suspected."

closed. We affirm the judgment of the trial court, albeit for different reasons.

The plaintiff, Barbara Edelstein, is a physician under investigation by the defendant, the department of public health and addiction services (department),[2] for allegedly improper billing practices. The department is authorized by statute to investigate complaints against licensed physicians. See General Statutes § 19a-14 (a) (10).[3] In 1991, the department received a complaint from a health insurer, Blue Cross/Blue Shield of Connecticut (Blue Cross),[4] alleging that the plaintiff had submitted several claims for reimbursement for services that she had not rendered. The complaint also alleged that the plaintiff had wrongfully caused Blue Cross to reimburse her for services that the insurance policy did not cover.

On June 5, 1995, in connection with its investigation of the plaintiff's billing practices, the department served the plaintiff with a subpoena duces tecum pursuant to its subpoena power under General Statutes § 19a-14 (a) (10). The subpoena sought the production of the medical records of approximately thirty patients who had been treated by the plaintiff from 1987 through 1989.[5] On

---

[2] The department is now known as the department of public health.

[3] General Statutes § 19a-14 provides in relevant part: "Powers of department concerning regulated professions. (a) The Department of Public Health shall have the following powers and duties with regard to the boards and commissions listed in subsection (b) which are within the Department of Public Health. The department shall . . .

"(10) Conduct any necessary review, inspection or investigation regarding qualifications of applicants for licenses or certificates, possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the Commissioner of Public Health or said commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the Superior Court may make such order as may be appropriate to aid in the enforcement of this section . . . ."

[4] Blue Cross is not a party to the present action.

[5] On August 3, 1995, the department served the plaintiff with a second subpoena duces tecum seeking the production of medical records of an

June 6, 1995, the plaintiff filed an application to quash the subpoena, claiming that these records were privileged under § 52-146o and that none of her patients had consented to the disclosure of their records. On October 10, 1995, the trial court granted the plaintiff's motion.

On November 2, 1995, the department filed a motion to open the trial court's judgment. In support of its motion, the department relied on a recently decided Superior Court case, *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, Superior Court, judicial district of Fairfield, Docket No. 93302072 (June 2, 1995) (14 Conn. L. Rptr. 392, 397), which held that § 52-146o does not apply to communications made before October 1, 1990, the effective date of the statute. The trial court agreed with *Rosado*, and concluded that the medical records at issue in the present case were not privileged because they contained communications made before the effective date of the statute. The trial court consequently granted the department's motion and denied the plaintiff's application to quash the subpoena. The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the plaintiff claims that § 52-146o prohibits her from disclosing records containing any patient communications, regardless of when such communications were made, without patient consent. The department responds that the records in question are not privileged because they contain communications made before the statute's effective date. In the alternative, the department argues that if § 52-146o does apply to these records, then they fall within the statute's exception

additional forty-three patients who had been treated during the same time period. The plaintiff's motion to quash the second subpoena is still pending in the trial court.

for the disclosure of communications to the department in connection with an investigation of a complaint against a licensed physician. Although we agree with the plaintiff that § 52-146o does apply to these records, we conclude that the records fall within the statute's exception for the disclosure of communications to the department pursuant to an investigation.

I

We begin with the evolution of the physician-patient privilege in Connecticut. A common law privilege for communications made by a patient to a physician has never been recognized in this state. *State* v. *Rollinson*, 203 Conn. 641, 657, 526 A.2d 1283 (1987); *State* v. *Hanna*, 150 Conn. 457, 464, 191 A.2d 124 (1963); *State* v. *Reid*, 146 Conn. 227, 231, 149 A.2d 698 (1959); *Zeiner* v. *Zeiner*, 120 Conn. 161, 167, 179 A. 644 (1935); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 12.8.1, p. 455. Although the plaintiff argues that these cases were wrongly decided and urges us to recognize a common law privilege for communications between a patient and a physician, we decline to do so in light of precedent and the legislature's subsequent action on this issue.

In 1990, the legislature created a broad physician-patient privilege when it enacted Public Acts 1990, No. 90-177, codified at § 52-146o. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988 & Sup. 1995) § 12.8.1, p. 455. General Statutes (Rev. to 1991) § 52-146o (a) provides that a physician "shall not disclose . . . any communication made to him by . . . a patient . . . unless the patient or his authorized representative explicitly consents to such disclosure." The purpose of the act is to protect the confidentiality of communications between a physician and a patient. See, e.g., 33 H.R. Proc., Pt. 14, 1990 Sess., p. 4860, remarks of Senator Richard D. Tulisano ("the bill is designed to insure that

a patient/doctor confidentiality is maintained"). The act became effective on October 1, 1990. See General Statutes § 2-32.[6]

As originally enacted in 1990, § 52-146o contained an exception for the disclosure of communications "pursuant to any statute or regulation of any state agency . . . ." General Statutes (Rev. to 1991) § 52-146o (b). Prior to the enactment of this statute, the department had been able to obtain medical records relating to an investigation of a licensed physician pursuant to its subpoena power under § 19a-14 (a) (10). After the enactment of § 52-146o, however, there was confusion as to whether the new statutory privilege overrode the department's authority under § 19a-14 (a) (10) to subpoena medical records containing otherwise privileged communications, or whether the department's authority continued to be recognized under the exception contained in § 52-146o (b) for the disclosure of communications pursuant to any statute or regulation of a state agency. See 39 S. Proc., Pt. 5, 1996 Sess., p. 1699, remarks of Senator George L. Gunther (referring to Superior Court case that called into question department's authority to obtain access to potentially privileged medical records in connection with investigation of physician).

In 1996, the legislature amended § 52-146o by enacting Public Acts 1996, No. 96-47, § 13, codified at § 52-146o (b) (3). The 1996 amendment provides an additional exception to the physician-patient privilege for the disclosure of communications "to the Commissioner of Public Health for records of a patient of a physician . . . in connection with an investigation of

---

[6] General Statutes § 2-32 provides: "Effective date of public and special acts. All public acts, except when otherwise therein specified, shall take effect on the first day of October following the session of the General Assembly at which they are passed, and special acts, unless otherwise therein provided, from the date of their approval."

a complaint, if such records are related to the complaint
. . . ." General Statutes § 52-146o (b) (3). That amend-
ment became effective on October 1, 1996. See Public
Acts 1996, No. 96-47, § 13.

## II

The medical records at issue in the present case con-
tain communications made by the plaintiff's patients
from 1987 through 1989, prior to the effective date of
§ 52-146o. The department sought disclosure of these
records in 1995, subsequent to the effective date of
§ 52-146o, but prior to the effective date of the 1996
amendment. In deciding whether these medical records
must be disclosed, we must determine whether the stat-
ute applies to these records and, if so, whether the
exception contained in the 1996 amendment permits
the disclosure of these records to the department in
connection with its investigation of the plaintiff.

## A

In determining whether § 52-146o applies to the
records at issue, we are guided by well defined princi-
ples of statutory interpretation. "Our fundamental
objective is to ascertain and give effect to the apparent
intent of the legislature. . . . In seeking to discern that
intent, we look to the words of the statute itself, to the
legislative history and circumstances surrounding its
enactment, to the legislative policy it was designed to
implement, and to its relationship to existing legislation
and common law principles governing the same general
subject matter." (Citations omitted; internal quotation
marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645
A.2d 965 (1994).

We begin with the language of the statute. Under
§ 52-146o (a), "a physician . . . shall not disclose . . .
any communication *made* to him by . . . a patient . . .
unless the patient . . . explicitly consents to such dis-

closure." (Emphasis added.) Although the statute uses the past participle, "made," to describe the communications, it does not use an auxiliary verb before the past participle to indicate the timing of the communications. As a result, it is unclear whether the statute applies to communications made before the statute's effective date, or only to those communications made after that date. Cf. *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 174–75, 479 A.2d 1191 (1984) (use of present perfect tense, "has had," to describe when distributorships come into existence indicates that act was intended to apply to distributorships in existence at time of act's passage, as well as newly created distributorships); *Everett* v. *Ingraham*, 150 Conn. 153, 156–57, 186 A.2d 798 (1962) (use of future perfect tense, "shall have been made," to describe when compensation awards are made indicates that act was intended to apply only to cases where compensation awards were made after effective date of act).

In ascertaining the meaning of this ambiguous language, we find guidance in this court's interpretation of similar language in *State* v. *Magnano*, 204 Conn. 259, 528 A.2d 760 (1987). *Magnano* involved the application of General Statutes § 52-146k,[7] which creates a privilege for communications made between a victim and a bat-

---

[7] General Statutes § 52-146k provides in relevant part: "Privileged communications between battered women's or sexual assault counselor and victim. . . .

"(b) On or after October 1, 1983, a battered women's counselor or a sexual assault counselor shall not disclose any confidential communications made to such counselor at any time by a victim in any civil or criminal case or proceeding or in any legislative or administrative proceeding unless the victim making the confidential communications waives the privilege, provided under no circumstances shall the location of the battered women's center or rape crisis center or the identity of the battered women's counselor or sexual assault counselor be disclosed in any civil or criminal proceeding. Any request made on or after October 1, 1983, by the defendant or the state for such confidential communications shall be subject to the provisions of this subsection. . . ."

tered women's shelter counselor, to communications made before the statute's effective date. *State* v. *Magnano*, supra, 274. As originally enacted in 1983, § 52-146k provided: "A battered women's counselor . . . shall not disclose any confidential communications made to such counselor by a victim . . . unless the victim . . . waives the privilege . . . ." General Statutes (Rev. to 1985) § 52-146k (b). In response to a Superior Court decision that held that communications made before the statute's effective date were not privileged, the legislature amended § 52-146k in 1985. See Public Acts 1985, No. 85-112; *State* v. *Magnano*, supra, 284. The 1985 amendment provided: "On or after October 1, 1983, [a] battered women's counselor . . . shall not disclose any confidential communications made to such counselor at any time by a victim . . . unless the victim . . . waives the privilege . . . ." Public Acts 1985, No. 85-112. In *State* v. *Magnano*, supra, 284, this court concluded that the 1985 amendment clarified the legislature's original intent that § 52-146k applies to communications made before, as well as after, the statute's effective date.

The purpose and language of the physician-patient privilege statute, § 52-146o, is similar to that of the counselor-victim privilege statute, § 52-146k, as originally enacted. The purpose of both statutes is to protect the confidentiality of communications in order to foster the free exchange of information from patient to physician, or from victim to counselor. See 1 C. McCormick, Evidence (4th Ed. 1992) § 98, pp. 368–69 (purpose of physician-patient privilege); see also *In re Robert H.*, 199 Conn. 693, 706, 509 A.2d 475 (1986) (purpose of battered women's counselor-victim privilege). Both statutes use the past participle of "make" to describe the timing of the communications—communications "made" by a patient or victim. It is reasonable to assume that the legislature, having made clear that this language in § 52-

146k applies to communications made before as well as after that statute's effective date, has signaled its intention with respect to the meaning of the nearly identical language of § 52-146o. It would be irrational for us to adopt the interpretation urged by the plaintiff, so as to require the legislature to step in again and clarify its original intention as to this language, as it did with § 52-146k. We conclude, therefore, that § 52-146o applies to communications made before, as well as after, the statute's effective date. Therefore, the medical records at issue in the present case are protected by the physician-patient privilege.

## B

We turn next to the question of whether the records in this case fall within the exception contained in § 52-146o (b) (3) for the disclosure of communications to the department in connection with an investigation of a complaint against a licensed physician. Because this exception was not expressly enacted until 1996, while the present case was on appeal, we must determine whether the legislature intended the amendment to clarify its earlier intention.

"In determining the effect of a subsequent statutory amendment on earlier legislation, we are guided by well defined principles of statutory interpretation. We recognize the usual presumption that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, however, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. . . . In determining the intended effect of a later enactment on earlier legislation, two questions must be asked. First, was the act intended to clarify existing law or to change it? Second, if the act was intended to make a change, was the change intended to operate retroactively?" (Citations

omitted; internal quotation marks omitted.) *State* v. *Magnano*, supra, 204 Conn. 277.

"To determine whether an act should be characterized as clarifying legislation, we look to the legislative history to determine the legislative intent." *Reliance Ins. Co.* v. *American Casualty Ins. Co. of Reading, Pennsylvania,* 238 Conn. 285, 290, 679 A.2d 925 (1996); see also *State* v. *Magnano,* supra, 204 Conn. 278; *State* v. *Blasko,* 202 Conn. 541, 558, 522 A.2d 753 (1987). In examining the legislative history of the 1996 amendment, we find several indications that the legislature intended the amendment to clarify the original intent of § 52-146o that the department may obtain access to medical records containing otherwise privileged communications when such records are related to its investigation of a complaint against a physician.

Senator George L. Gunther, cochairman of the committee on public health, specifically stated that the intent of the amendment was to clarify existing law. During debate in the state Senate, Senator Gunther explained: "This whole bill is supported by the Department [of Public Health], and the need to *clarify* the present language in the law, which allows for the exploration of a complaint, but it does not . . . get into violating of the patient's confidentiality." (Emphasis added.) 39 S. Proc., supra, pp. 1700–1701. Furthermore, Senator Gunther acknowledged the existing authority of the department to seek access to otherwise confidential medical records pursuant to its subpoena power. See id., p. 1700, remarks of Senator George L. Gunther ("[t]he Department [of Public Health] still retains the right to defend its need for [a] patient's medical and psychiatric records by obtaining a subpoena, if such records are necessary for the investigation of a complaint").

Furthermore, the legislation was passed, at least in part, in response to controversy over the interplay

between § 52-146o and § 19a-14 (a) (10), which had been brought to light by a Superior Court decision. Senator Gunther stated: "[T]he bill expressly authorizes physicians and other licensed health care providers to release [patient] records to the Department of [Public] Health as part of an investigation o[f] a complaint. Actually as a recent Superior Court decision cast some question as to whether that could be done or not." Id., p. 1699. The 1996 amendment, therefore, appears to be "a classic reaction to a judicial interpretation that was deemed inappropriate." *State* v. *Magnano*, supra, 204 Conn. 283. " 'Once litigation brought that ambiguity to light, the legislature acted to remove any doubt about its earlier intentions.' " Id. The legislature's action in 1996 implicates the principle of statutory construction that "[i]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act." (Internal quotation marks omitted.) Id., 283–84; see also *Reliance Ins. Co.* v. *American Casualty Ins. Co. of Reading, Pennsylvania,* supra, 238 Conn. 289; *State* v. *Blasko,* supra, 202 Conn. 558; 1A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 22.31, p. 278.

This legislative history persuades us that the 1996 amendment was intended to be clarifying legislation. In light of our conclusion that the amendment was intended to clarify, rather than to change, existing law, we need not consider whether the change was to have retroactive effect. See *State* v. *Magnano,* supra, 204 Conn. 284. "Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." Id. "A clarifying act 'in effect construes and clarifies a prior statute [and] must be accepted as the legislative declaration of the meaning of the original act.' " *State* v. *Nixon,* 231 Conn. 545, 560–61, 651 A.2d 1264 (1995); see also *Reliance Ins.*

Co. v. *American Casualty Ins. Co. of Reading, Pennsylvania,* supra, 238 Conn. 289; *State* v. *Blasko,* supra, 202 Conn. 558; *Neyland* v. *Board of Education,* 195 Conn. 174, 180, 487 A.2d 181 (1985).

We conclude that the 1996 amendment must be accepted as a declaration of the legislature's original intent that the department may obtain access to medical records containing otherwise privileged communications when such access is sought in connection with the investigation of a complaint against a physician, and when the records are related to that complaint. Therefore, the exception contained in § 52-146o (b) (3) applies to the medical records sought in the present case and requires that the plaintiff disclose these records to the department.

We note that the exception contained in § 52-146o (b) (3) is a narrow one. It applies only to those records related to the complaint that is under investigation. It does not give the department access to unrelated records or records beyond the scope of the complaint against the physician. As Senator Gunther explicitly stated: "It is not the intent of this Amendment to allow unchecked access to private, personal medical records unrelated to a complaint filed against the provider. The Department [of Public Health] would not be allowed to use this privilege as a gate way to other unrelated patient and provider records. This Amendment would not allow the Department of [Public] Health access to other patients' records, not specifically related to the complaint filed, nor would the Department be allowed access to the patient's records that fall beyond the scope of the complaint filed." 39 S. Proc., supra, p. 1700. In enacting § 52-146o (b) (3), the legislature strove to find the appropriate balance between protecting the confidentiality of patient communications and protecting public health by authorizing the department to obtain medical records needed in the investigation of com-

plaints against licensed physicians.[8]

We conclude, therefore, that the trial court properly denied the plaintiff's motion to quash the subpoena.

The judgment is affirmed.

In this opinion the other justices concurred.

[8] Furthermore, if a physician refuses to produce potentially privileged records that have been subpoenaed by the department, the trial court is authorized pursuant to § 19a-14 (a) (10) to fashion an order "as may be appropriate" to aid in the department's investigation. We note that there is nothing in that statute prohibiting the trial court from fashioning an order that not only addresses the department's needs, but also respects the confidential nature of such records.