GENERAL ACCIDENT INSURANCE COMPANY OF
AMERICA *v.* POWERS, BOLLES, HOULIHAN
AND HARTLINE, INC.
(AC 17345)

O'Connell, C. J., and Lavery and Schaller, Js.

Argued March 23—officially released October 13, 1998

*Daniel P. Scapellati*, with whom, on the brief, was *Joseph T. Sweeney*, for the appellant (defendant).

*William F. Corrigan*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. This appeal arises out of proceedings in the trial court following our decision in *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, 38 Conn. App. 290, 660 A.2d 369, cert. denied, 235 Conn. 904, 665 A.2d 901 (1995). The defendant, Powers, Bolles, Houlihan and Hartline, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, General Accident Insurance Company of America (General Accident), in the amount of $105,904.

On appeal, the defendant claims that the trial court improperly (1) concluded that its insurance application was deficient as a matter of law for the purpose of electing a lesser amount of uninsured-underinsured motorist coverage, and (2) failed to hold that the proper measure of damages was the difference between the premium that was actually charged to the policyholder for the coverage and the premium that would have been charged for the higher amount of coverage.[1] We reverse the judgment of the trial court.

---

[1] Our determination of the first issue on appeal makes resolution of this issue unnecessary.

The following relevant facts and procedural history are recited in *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 38 Conn. App. 290. "On January 19, 1990, the plaintiff and the defendant were parties to an insurance agency agreement. At that time, the defendant processed an application from Barbara Zakrzewski to the plaintiff, requesting automobile insurance for each of two automobiles owned by Zakrzewski. The application form utilized by the plaintiff was entitled the 'Acord Personal Automobile Application.' This form was completed by the defendant and signed by Zakrzewski. It requested $100,000 of liability coverage and $40,000 of uninsured-underinsured motorist coverage for each of her two automobiles. At the time of Zakrzewski's application for automobile insurance, General Statutes (Rev. to 1989) § 38-175c (now § 38a-336)[2] required that every automobile liability insurance policy 'issued or renewed on and after July 1, 1984' was to have uninsured motorist coverage equal to the liability coverage of the policy 'unless the insured requests in writing a lesser amount.'

"On July 19, 1990, Zakrzewski's son, John Sliwka, was seriously injured in a motor vehicle accident when the car in which he was a passenger went off the road and overturned. Sliwka filed a claim against the operator's insurance carrier, which paid its policy limit of $20,000. Sliwka then filed a claim against the plaintiff for underinsured motorist coverage under Zakrzewski's policy. Sliwka alleged that there had been no written

[2] General Statutes (Rev. to 1989) § 38-175c (a) (2) provides in relevant part: "Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. . . ." Section 38-175 (a) (2) was transferred without change to § 38a-336 (a) (2) in 1991. We refer in this opinion to the statute's current designation, § 38a-336.

request by Zakrzewski for uninsured-underinsured motorist coverage in an amount less than the liability coverage, as required under § 38a-336. Because the policy provided for $100,000 of liability coverage, Sliwka filed a claim based on $100,000 of uninsured-underinsured motorist coverage for each of two vehicles. Sliwka's claim was for $180,000.[3]

"After determining that the Acord application signed by Zakrzewski did not fulfill the statutory requirement of a written request for a lower limit of uninsured-underinsured motorist coverage, the plaintiff concluded that it owed Sliwka up to $200,000 in uninsured-underinsured motorist coverage. The plaintiff subsequently settled the claim with Sliwka for $160,904.

"Thereafter, the plaintiff filed a two count complaint against the defendant, alleging both breach of contract and negligence. The plaintiff alleged that the defendant was liable for failing to obtain a written request from Zakrzewski for uninsured-underinsured motorist coverage in an amount less than the liability coverage. The plaintiff claimed damages of $105,530, the amount by which the plaintiff's payment to Sliwka exceeded the intended coverage under the policy.[4]

"The focal point of the evidence during trial was the Acord application form, which had been filled out by the defendant and signed by Zakrzewski on January 19,

---

[3] This figure is the total of $100,000 of uninsured-underinsured motorist coverage for each of two vehicles. This was reduced by $20,000, which Sliwka received from the automobile operator's insurance carrier." *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.,* supra, 38 Conn. App. 292 n.3.

[4] The plaintiff claimed that the intended coverage under the policy was $55,000. The policy called for $40,000 of uninsured-underinsured motorist coverage for each of two vehicles, totaling $80,000. This was to be reduced by the $20,000 Sliwka received from the operator's insurance carrier and $5000 in basic reparations paid, leaving a total of $55,000. The difference between the plaintiff's actual payment to Sliwka and $55,000 came to $105,530.

1990. The primary liability issue was whether that Acord application satisfied the written request requirement imposed by § 38a-336. The defendant conceded that it had a duty to obtain a sufficient written request to comply with the statute, but it argued that the Acord application satisfied that statutory requirement. The plaintiff argued that the Acord application did not satisfy the statute and that the defendant should have utilized a separate, supplemental application form which the plaintiff had prescribed.[5] The jury returned a verdict in favor of the plaintiff on the breach of contract count, awarding $20 in damages,[6] and in favor of the defendant on the negligence count. The verdict was accepted and recorded on September 21, 1993." *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 38 Conn. App. 291–94.

Both parties appealed to this court, claiming that the trial court improperly instructed the jury. We determined in the first appeal that the trial court's charge with respect to § 38a-336 was inadequate to guide the jury on issues of fact and impermissibly forced the jury to decide a material question of law. Id., 298. We remanded the case for a new trial. Id. Thereafter, the parties submitted the case to the trial court, first, for a determination of liability on the basis of summary judgment and, second, for a determination of the appropriate measure of damages if liability was found. The trial court granted summary judgment in favor of the

---

[5] "This supplemental form specifically dealt with uninsured-underinsured motorist coverage and options available to an insured." *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 38 Conn. App. 293 n.5.

[6] "During the trial, the jury heard testimony from one of the plaintiff's employees that if Zakrzewski's policy had provided $100,000 of uninsured motorist coverage per car, rather than the $40,000, the premium price would have been $20 higher than the premium price actually charged." *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, supra, 38 Conn. App. 294 n.6.

plaintiff as to liability. Subsequently, the trial court directed the jury to return a verdict in favor of the plaintiff in the amount of $105,904. Additional relevant facts will be recited where necessary.

The defendant claims that the trial court, in ruling on the parties' cross motions for summary judgment, improperly concluded that the Acord application was deficient as a matter of law for the purpose of electing a lesser amount of uninsured motorist coverage.[7] The defendant argues that the trial court improperly interpreted the following phrase in General Statutes § 38a-336: "unless the insured requests in writing a lesser amount." The defendant argues that the trial court, after concluding that the phrase was unambiguous, improperly went on to consider the legislative history of the statute and to consider as "clarification" the elaborate new requirements contained in § 2 of No. 93-297 of the 1993 Public Acts (P.A. 93-297),[8] which was enacted

[7] At the time of Zakrzewski's application for automobile insurance, General Statutes (Rev. to 1989) § 38-175c, now § 38a-336, required that every automobile liability insurance policy "issued or renewed on and after July 1, 1984" was to have uninsured motorist coverage equal to the liability coverage of the policy "unless the insured requests in writing a lesser amount." It was not until almost four years later, in Public Acts 1993, No. 93-297, that the legislature imposed the more exacting standards to evidence an insured's knowing waiver of the standard uninsured-underinsured coverages. See footnote 8.

[8] Number 93-297, § 1, of the 1993 Public Acts amended General Statutes (Rev. to 1993) § 38a-336 (a) (2) to provide: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by any named insured. No such written request for a lesser amount shall be effective unless any named insured has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured

subsequent to the transactions that occurred in this case.[9] The defendant contends that in so doing, the trial court ignored the plain language of the statute in determining that the Acord Personal Automobile Application was deficient as a matter of law for the purpose of electing a lesser amount of uninsured-underinsured coverage.

The plaintiff argues that the trial court properly considered the legislative history of § 38a-336 and the language of P.A. 93-297 in determining that the Acord application did not constitute a request in writing for lesser coverage.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established." *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 402, 528 A.2d 805 (1987). Practice Book § 17-49, formerly § 384, requires that "[t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks

motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR.' "

[9] The effective date of the amendment is January 1, 1994.

omitted.) *Connell* v. *Colwell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A motion for summary judgment "is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985). Because this appeal involves questions of statutory construction, it presents a question of law, which we review de novo. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

In addressing the issues in this case, we are initially guided by well defined principles of statutory interpretation. The court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Edelstein* v. *Dept. of Public Health & Addiction Services*, 240 Conn. 658, 664, 692 A.2d 803 (1997), quoting *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). Moreover, principles of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991). The court "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." Id., 713. "When . . . we are confronted with ambiguity in a statute, we look to its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment to determine the legislative intent. *Verrastro* v. *Sivertsen*, 188 Conn. 213, 221, 448 A.2d 1344 (1982)." (Internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Pasion*, 219 Conn. 764, 769, 594 A.2d 468 (1991). "Where the legislative intent is clear there is no room for statutory construction." (Internal quotation marks omitted.) *Kelemen* v. *Rimrock Corp.*, 207 Conn. 599, 606, 542 A.2d 720 (1988). "[W]hen the language of a statute is plain

and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *State* v. *White*, 204 Conn. 410, 421, 528 A.2d 811 (1987); *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, [54], 523 A.2d 477 (1987)." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987).

The trial court determined that application of the principles of statutory interpretation to the phrase "requests in writing a lesser amount" required "a finding that the legislature intended to require a more exacting writing [than] an insurance application, filled out by the insurance agent, signed by the insured, containing no conspicuous notice of the insured's right to the statutory amount of coverage or specified alternatives, or of the effect of making the election." The trial court found that the phrase was unambiguous and that "the words themselves express the intent of the legislature." The trial court reached its conclusion primarily based on its interpretation of the common usage of the terms in the phrase in question. In addition, however, the trial court went on to examine P.A. 93-297 and determined that the public act clarified the earlier law. As we have noted, P.A. 93-297 enacted specific requirements including the signing of an informed consent form before an insured's election of a lesser amount of insurance coverage would be effective.

We believe that the trial court was correct in concluding that the phrase "requests in writing a lesser amount" is unambiguous and that accordingly, resort to legislative history is unnecessary.[10] According to the *plain*

---

[10] The plaintiff includes in its brief a portion of the legislative history of § 38a-336, namely, a statement by Senator Wayne A. Baker, a chairman of the committee on insurance and real estate. Senator Baker stated: "The insured would have an opportunity to waive in writing the additional uninsured motorist coverage." 26 S. Proc., Pt. 9, 1983 Sess., p. 3055. Even if it were necessary to consider that statement, it does not reveal the legislative

*meaning of the statute,* the requirement is fully satisfied by the written application for insurance that was signed by the insured. The plaintiff notes in its brief that "[t]he application signed by Ms. Zakrzewski requested $100,000 liability and $40,000 uninsured motorist/underinsured motorist coverage for each of two automobiles." That statement plainly indicates the plaintiff's acknowledgement that Zakrzewski requested in writing an amount of uninsured motorist coverage in a lesser amount than the liability coverage. There is no requirement that the plaintiff personally produce the writing. That requirement is satisfied by the Acord application. The Acord application includes reference to both the greater amount of liability coverage and the lesser amount of uninsured coverage. The difference is unmistakable. There was no requirement at the time of the insured's application that the writing must specifically use the term "lesser" in requesting the uninsured coverage. The difference in amounts of coverage requested informs the insured that the uninsured coverage was requested in a lesser amount than the liability coverage. Thus, the plain language of the statute is satisfied. Section 38a-336 required nothing further of the insured in order effectively to waive the uninsured coverage in an amount equal to the liability coverage.

The trial court stated that "[t]here is no evidence in the writing that the alleged election to purchase less uninsured motorist coverage than the statute would have prescribed was informed, conscious or reflective." The language of § 38a-336 provided no requirement that the writing contain such evidence. The statute required only that the insured "requests in writing a lesser amount." We note, however, that the trial court had in its possession, when it ruled on the summary judgment motions, undisputed evidence in the affidavit of Arthur

intent with any greater clarity than is expressed in the statutory language itself.

B. Powers, an officer of the defendant, stating facts to support a determination that the insured's decision was informed, conscious and reflective.[11]

Our analysis of the statutory language of § 38a-336 is in accord with the line of cases decided by our Supreme Court governing this subject. See *Harlach* v. *Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 602 A.2d 1007 (1992); *Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn. 764; *Travelers Indemnity Co.* v. *Malec*, 215 Conn. 399, 576 A.2d 485 (1990). In *Malec*, the Supreme Court, addressing § 38-175c, now § 38a-336, stated: "We have no doubt that the General Assembly contemplated that an insured should make a purposeful and knowing decision to request a lesser amount of [uninsured motorist] coverage." *Travelers Indemnity Co.* v. *Malec*, supra, 403. The court examined the legislative history in the course of concluding that the insured's rejection in that case did not satisfy the statutory requirement because it was a past, not present, rejection of the coverage. Id., 402–404. The court, in referring to the statutory language "unless the insured requests in writing a lesser amount," did not hold that any specific language or procedure was necessary in order to constitute an effective request. Id., 404.

In *Harlach*, which upheld an election of lesser coverage pursuant to § 38-175c, now § 38a-336, our Supreme Court stated: "Although the word 'waiver' nowhere appears in the statute, even if we assume, arguendo, that the waiver doctrine was applicable to the circumstances here, application of its principles would not support the plaintiff's position. 'Waiver is the voluntary relinquishment of a known right. It involves the idea of

---

[11] Powers stated in his affidavit that he thoroughly discussed the coverages available to the insured, including the right to elect uninsured-underinsured coverage equal to the amount of the liability coverage, and that she made an informed choice in electing less coverage.

assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear, but acts and conduct . . . inconsistent with intention to terminate the contract are sufficient. The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct.' . . . *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 547–48, 173 A. 783 (1934). 'In order to waive a claim of law it is not necessary . . . that a party be certain of the correctness of the claim and its legal efficacy. It is enough if he knows of the existence of the claim and of its reasonably possible efficacy.' *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 257–58, 205 A.2d 780 (1964). The plaintiff knew that he was selecting less coverage than that to which he was entitled. The notice made it very clear that increased amounts of coverage were available at a higher premium and that an election to accept less would reduce both the amount of coverage and the policy premium." *Harlach* v. *Metropolitan Property & Liability Ins. Co.*, supra, 221 Conn. 192–93.

Finally, in *Nationwide Mutual Ins. Co.*, supra, 219 Conn. 771, in deciding that the signature of one insured could not bind another, our Supreme Court referred to a "conscious choice" being necessary to elect lesser coverage. As in *Malec*, the court in *Nationwide Mutual Ins. Co.* did not prescribe any specific language as necessary for an insured to make the election effectively. Id., 770–71.

We turn next to the relevance, if any, to the present case of P.A. 93-297. There is no doubt that the legislature, in 1993, enacted more elaborate requirements for the insured's waiver. The issue is whether that public act qualifies as an amendment that clarifies the language of § 38-175c at issue in this case. See *Daly* v. *DelPonte*, 225 Conn. 499, 511, 624 A.2d 876 (1993) (subsequent

amendment to existing statute may clarify legislature's original intent).

The guidelines for determining whether an amendment can be applied retroactively as a clarifying act are well known. "Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. See, e.g., *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. *Coley* v. *Camden Associates , Inc.*, 243 Conn. 311, 316, 702 A.2d 1180 (1997). This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. *In re Daniel H.*, 237 Conn. 364, 372, 678 A.2d 462 (1996); accord *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 483–84, 659 A.2d 1188 (1995); *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991). Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect. . . . *Toise* v. *Rowe*, 243 Conn. 623, 628, 707 A.2d 25 (1998). We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect. See, e.g., *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 290, 679 A.2d 925 (1996); *Rice* v. *Vermilyn Brown*,

*Inc.*, 232 Conn. 780, 787, 657 A.2d 616 (1995)." (Internal quotation marks omitted.) *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 718–19, 714 A.2d 1209 (1998).

There is no doubt that P.A. 93-297 addresses the same subject matter as the statute that it was enacted to amend. That coincidence, however, does not mean that the later act was intended to clarify the earlier. The trial court construed P.A. 93-297 as a clarification of § 38a-336, and the plaintiff urges us to so construe the act. Neither the trial court nor the plaintiff, however, has offered any analysis of the pertinent factors necessary to support such a construction of the act. The plaintiff points to no judicial interpretation to which the legislature was responding. No controversies are cited that the act was supposedly designed to resolve. The legislative history pertaining to P.A. 93-297 makes no mention of whether the act was intended to clarify the language at issue in § 38a-336. There is no indication in the language of P.A. 93-297, its legislative history or the surrounding circumstances that the legislature intended the act to clarify the existing law. Rather than a clarification of existing law, in response to a controversy created by a judicial interpretation, P.A. 93-297 represents a decision by the legislature to change the law by adding elaborate and stringent requirements before an insured could be deemed to waive a lesser amount of uninsured motorist coverage. *Colonial Penn Ins. Co.* v. *Bryant*, supra, 245 Conn. 722–23 (P.A. 93-297 change, not clarification, of existing law with respect to whether any named insured may elect less uninsured motorist coverage on behalf of all insureds). In the absence of evidence that P.A. 93-297 was intended to clarify existing law, the newly created stringent requirements may not be applied retroactively to the facts of this case. The defendant's conduct must be measured according to the language of the statute then in effect, General Statutes (Rev. to 1989) § 38-175c. On the basis

of the plain language of that statute, we conclude that the Acord Personal Automobile Application signed by the insured fulfilled the statutory requirement of a request by the insured in writing for a lesser amount of uninsured motorist coverage. As a result, the trial court improperly rendered judgment in favor of the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.