COLONIAL PENN INSURANCE COMPANY *v.*
D. EUGENE BRYANT

D. EUGENE BRYANT *v.* ROYAL INSURANCE
COMPANY

D. EUGENE BRYANT *v.* COLONIAL PENN
INSURANCE COMPANY
(AC 15518)
(AC 15519)

Dupont, C. J., and Schaller and Ronan, Js.

Argued February 28—officially released June 24, 1997

*Frederick L. Murolo*, with whom was *Jeffrey L. Fisher*, for the appellant-appellee (plaintiff in the first case, defendant in the third case).

*Dennis A. Ferdon*, with whom, on the brief, was *Lori M. Serra-Comforti*, for the appellee-appellant (plaintiff in the second and third cases, defendant in the first case).

*Constance L. Epstein*, with whom, on the brief, was *Matthew D. Gilmond*, for the appellee (defendant in the second case).

*Opinion*

DUPONT, C. J. These appeals arise from a consolidation of three cases. In the first case, Colonial Penn Insurance Company (Colonial) applied to the trial court to vacate or modify an arbitration award involving it and D. Eugene Bryant (Bryant). Bryant is the insured on a policy issued by Colonial that provided him with uninsured and underinsured motorist coverage. At issue is the amount of coverage that policy provided. Colonial claims that the coverage is $40,000, whereas Bryant and the Royal Insurance Company (Royal), which issued a policy to Bryant that provides excess coverage, claim it is $200,000. The arbitrators determined that the coverage of the Colonial policy is $200,000.

The second and third cases were brought by Bryant against Royal and Colonial. In those cases, Bryant sought to confirm the award in his favor against Colonial and to vacate a separate award in which it was determined that Bryant's claim against Royal was moot

due to Colonial's liability for all of the damages. Bryant claimed that, if the court vacated the award against Colonial, it should also vacate the award in favor of Royal.[1]

The arbitration hearing established that Bryant sustained damages in the amount of $180,000 and that he had recovered $25,000 from a third party tortfeasor. The balance of $155,000 was found by the arbitrators to be due from Colonial, with no portion of the award being payable by Royal as the excess insurer. Bryant filed a motion to confirm the award in his case against Colonial. In the action by Bryant against Royal, Bryant seeks to vacate the award in Royal's favor and to obtain coverage from Royal in the amount of $140,000, in the event Colonial is found to be responsible for only $15,000 ($40,000 of coverage less the $25,000 from the third party tortfeasor). The trial court confirmed the award of the arbitrators[2] in favor of Bryant against Colonial in the amount of $155,000.

The facts are not in dispute. Bryant and his wife, Judith Bryant, were named insureds under Colonial's policy, which covered two vehicles. Before March 15, 1988, the policy provided for $100,000 uninsured-underinsured motorist coverage per vehicle. When the policy was renewed on that date, Bryant signed a form requesting a reduction in coverage to $20,000 per vehicle but his wife did not sign the form.[3] The cars were owned by both husband and wife, and Bryant was driving one of them at the time of the accident on September

---

[1] In appeal 15518, Colonial challenges the confirmation of the award against it. In appeal 15519, Bryant challenges the confirmation of the award in favor of Royal.

[2] One arbitrator of the three person panel dissented.

[3] The parties stipulated that the Colonial policy was primary and because two vehicles were involved, the underinsured motorist coverage could be stacked to provide $200,000 in coverage or $40,000, depending on the effectiveness of the execution of the form.

20, 1989. These cases do not concern whether Bryant will receive underinsured motorist coverage consonant with his injuries but whether his damages are the sole responsibility of Colonial.

Because Judith Bryant did not sign the form reducing coverage, the arbitration panel determined that the form was invalid, and that the prior coverage of $100,000 per vehicle remained intact. It relied on General Statutes (Rev. to 1989) § 38-175c (a) (2)[4] and *Nationwide Mutual Ins. Co.* v. *Pasion*, 219 Conn. 764, 594 A.2d 468 (1991), to reach that conclusion. Colonial argues that *Pasion* does not apply because it is factually different in that neither of the coinsureds, but rather a passenger in their car, was the injured party, whereas in this case, the insured party that had signed the form opting for the lower coverage was the injured party. The trial court, however, rejected Colonial's argument and rendered judgment confirming the arbitration award. The trial court, relying on *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 587 A.2d 415 (1991), also held that Colonial was entitled to reimbursement for basic reparations it had paid to Bryant in the amount of $5000.[5]

At the time Bryant signed the reduction form requesting coverage of $20,000, on March 15, 1988, *Pasion* had not yet been decided, but § 38-175c (a) (2) had been passed, applying to policies issued or renewed

---

[4] General Statutes (Rev. to 1989) § 38-175c (a) (2) provides in pertinent part: "Notwithstanding any provision of this section to the contrary, every [automobile liability insurance] policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless *the insured* requests in writing a lesser amount . . . . Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to *the named insured*, unless changed in writing by the insured." (Emphasis added.)

[5] Bryant has withdrawn his cross appeal as to that holding.

after July 1, 1984. *Pasion* clearly holds that coowners of a car who are named insureds on an automobile liability insurance policy must both sign the authorization for a reduction in coverage, regardless of the relationship between the coowners, in order for a reduction in coverage to be effective when a passenger in the insureds' car, driven by the nonsigning owner suffers injuries. *Nationwide Mutual Ins. Co.* v. *Pasion,* supra, 219 Conn. 771. The rationale of the court was that "[t]o permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one." Id. The question we must decide is whether *Pasion*'s holding, in view of that rationale, is limited to situations where one coinsured has not signed the reduction form and a third party is injured while that coinsured was driving the insured car, or whether it also applies to situations, as here, where the coinsured who did sign the form is the one suffering injuries.

Because the legislature's intent was to make certain that a consumer make an informed decision before electing reduced coverage, that purpose is fulfilled when a "consumer" has made such a decision by signing the form. The consumer in this case is the one who elected lower coverage. As to him, the election was not uninformed. We, therefore, conclude that *Pasion* does not apply to this case.

There is another more compelling reason, however, to conclude that the coverage reduction form was effective and binding on both coinsureds. *Pasion* interpreted General Statutes (Rev. to 1989) § 38-175c (a) (2), which was subsequently amended and is now General Statutes § 38a-336 (a) (2). Colonial argues that the amendment should be applied retroactively and cites *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania,* 238 Conn. 285, 679 A.2d 925 (1996), as authority

for a retroactive application.[6] The question is whether the language of § 38a-336 (a) (2) modified § 38-175c (a) (2) and, if so, whether the modifying language should control. Section 38-175c (a) (2) at the time *Pasion* was decided,[7] and on the date the reduction form was signed, used the terms "insured" and "named insured." Section 38a-336 (a) (2) substitutes the term *"any* named insured" for those terms. (Emphasis added.)[8] Colonial argues that the word "any" reflects the legislative intent to clarify that only one named insured needs to sign a reduction form in order for it to be effective, and that such was always the legislative intent. Colonial, therefore, claims that the change in the wording was the legislature's direct response to the interpretation of

[6] *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania,* supra, 238 Conn. 285, is not cited for the proposition that § 38a-336 (a) (2) effectively overruled *Nationwide Ins. Co.* v. *Pasion,* supra, 219 Conn. 764. *Reliance Ins. Co.* does not involve a coverage reduction form.

[7] The judgment of the trial court in this case was rendered on November 29, 1995, after the amendment's effective date of January 1, 1994.

[8] General Statutes § 38a-336 (a) (2) provides: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after January 1, 1994, shall provide uninsured and underinsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless *any named insured* requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by *any named insured.* No such written request for a lesser amount shall be effective unless *any named insured* has signed an informed consent form which shall contain: (A) An explanation of uninsured and underinsured motorist insurance approved by the commissioner; (B) a list of uninsured and underinsured motorist coverage options available from the insurer; and (C) the premium cost for each of the coverage options available from the insurer. Such informed consent form shall contain a heading in twelve-point type and shall state: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR.' " (Emphasis added.)

§ 38-175c (a) (2) in *Pasion*, which interpretation never reflected the original legislative intent.[9]

We must first determine whether the language "any named insured" has a meaning different from "insured" or "named insured." If it does, we must next determine whether the purpose of the amendment was to clarify what had always been the law or to change the law substantively. If it is a clarification, it may be applied retroactively; if not, it may not be applied retroactively. These questions have not yet been determined by any appellate court. Previous decisions have mentioned § 38a-336 (a) (2) as successor legislation to § 38-175c (a) (2) but have interpreted the legislative history of only the latter, without reference to the change in language as discussed in this opinion.

"Any" is defined as "one or some indiscriminately of whatever kind . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). "Any" also has a diversity of meanings when used in a statute and may mean "all," "every," "some" or "one" because its meaning in a statute depends on the context and subject matter of the statute. *Muller* v. *Town Plan & Zoning Commission*, 145 Conn. 325, 328–29, 142 A.2d 524 (1958). To determine which definition should apply, we examine the original wording of the statute, the nature of the change, and the legislative history. Here, the legislative history is not revealing. The words themselves, however, provide some guidance. "Any" in the phrase "any named insured" modifies or describes "named insured." The addition of the word "any" alters the meaning of "insured." If there is more than one insured, "any" can mean the smallest quantity or smallest number of two or more. Because the original wording of the statute was changed after *Pasion*, we conclude that the change

---

[9] The legislative history of § 38a-336 (a) (2) is silent as to any reason for the change in language.

was in response to *Pasion*'s holding, and that the addition of the word "any" should be construed as meaning "one."

Legislation, when prompted by a particular case, which clarifies language construed by that case contrary to the original intention of the legislature, operates as the legislature's declaration of the meaning of the original act. See *Turner* v. *Turner*, 219 Conn. 703, 717, 595 A.2d 297 (1991). Such legislation is a restatement of legislative intent and may be applied retroactively. *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, supra, 238 Conn. 291. For us to conclude that the legislature intended, by the passage of subsequent legislation, to clarify a prior act, the legislative history of the subsequent legislation need not refer to the particular case in which the prior legislation was misinterpreted. See *Circle Lanes of Fairfield, Inc.* v. *Fay*, 195 Conn. 534, 540–41, 489 A.2d 363 (1985); see also *State* v. *Magnano*, 204 Conn. 259, 280, 528 A.2d 760 (1987). "The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we previously had interpreted a statute to confer." *State* v. *Magnano*, supra, 284. If an amendment clarifies the original intent of an earlier statute, of necessity it has a retroactive effect. Id. "According to well established principles of statutory construction, an amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act." *Turner* v. *Turner*, supra, 717.

We conclude that § 38a-336 (a) (2) makes it clear that either one of the coinsureds may elect to obtain lower coverage, with that election being binding on all the coinsureds. It was within the power of the legislature to conclude that when there is one policy, and one premium, one election of lower coverage by one of two or more coinsureds will be effective as to the others.

The judgment is reversed in part and the case is remanded with direction to render judgment vacating the award against Colonial in part and requiring Colonial to pay Bryant $15,000 less any sum not yet repaid by Bryant as a result of the basic reparation reimbursement due Colonial, and vacating the award in favor of Royal and requiring Royal to pay the balance of the award not paid by Colonial, namely $140,000.

In this opinion the other judges concurred.