COLONIAL PENN INSURANCE COMPANY *v.* D. EUGENE BRYANT

D. EUGENE BRYANT *v.* ROYAL INSURANCE COMPANY

D. EUGENE BRYANT *v.* COLONIAL PENN INSURANCE COMPANY
(SC 15778)

Callahan, C. J., and Borden, Katz, Palmer and McDonald, Js.

Argued February 17—officially released July 28, 1998

*Constance L. Epstein*, for the appellant (Royal Insurance Company).

*Frederick L. Murolo*, with whom was *Jeffrey L. Fisher*, for the appellee (Colonial Penn Insurance Company).

*Kerin M. Woods* and *Dennis A. Ferdon* filed a brief for the appellee (D. Eugene Bryant).

*Opinion*

PALMER, J. In *Nationwide Mutual Ins. Co. v. Pasion*, 219 Conn. 764, 594 A.2d 468 (1991), we held that under General Statutes (Rev. to 1989) § 38-175c (a) (2),[1] a written request to reduce uninsured motorist coverage[2] signed by only one of two named insureds under an automobile liability insurance policy was ineffective to reduce the uninsured motorist benefits available to a third party who had been injured in an accident while a passenger in a vehicle covered under the policy. In this certified appeal, we must decide whether, under that statutory subsection, a written request for a reduction in uninsured motorist coverage submitted by one

---

[1] General Statutes (Rev. to 1989) § 38-175c (a) (2) provides in relevant part: "Notwithstanding any provision of this section to the contrary, every [automobile liability insurance] policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount . . . . Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured."

[2] Throughout this opinion, the term uninsured motorist coverage encompasses underinsured motorist coverage as well. See *Rydingsword v. Liberty Mutual Ins. Co.*, 224 Conn. 8, 14 n.11, 615 A.2d 1032 (1992).

of two named insureds under an automobile liability policy is effective when it is the insured who signed the reduction request form who seeks uninsured motorist benefits. We conclude that, in such circumstances, our decision in *Pasion* does not apply and, furthermore, that the named insured's request for a reduction in uninsured motorist coverage is binding as against that insured.

The material facts and procedural history are undisputed. At all times relevant to this appeal, the defendant, D. Eugene Bryant (Bryant), and his wife, Judith Bryant, owned three vehicles. Two of those vehicles were insured under a policy issued by Colonial Penn Insurance Company (Colonial Penn), and the third vehicle was insured under a policy issued by Royal Insurance Company (Royal). Bryant and his wife were the named insureds under each of the two policies. The Royal policy provided for $250,000 in uninsured motorist coverage. Prior to March, 1988, the Colonial Penn policy provided uninsured motorist coverage of $100,000 for each of the two vehicles covered under the policy.

Upon notification by Colonial Penn that its policy was due to expire, Bryant renewed the policy in March, 1988. Bryant also signed and forwarded to Colonial Penn a form requesting a reduction in uninsured motorist coverage from $100,000 per vehicle to $20,000 per vehicle.[3] Judith Bryant, however, did not sign the reduction request form. As a result of Bryant's request, he and his wife paid a lower premium for the reduced uninsured motorist coverage.

Bryant thereafter was injured in an automobile accident on September 20, 1989. After exhausting the tortfeasor's liability coverage of $25,000, Bryant sought to

---

[3] The reduction request form filled out and signed by Bryant provided various uninsured motorist coverage options and set forth with specificity the cost of each option. Bryant chose the minimum uninsured motorist limits of $20,000/$40,000.

recover uninsured motorist benefits under the Colonial Penn and Royal policies. The parties stipulated that the Colonial Penn policy provided primary uninsured motorist coverage,[4] and that, under then applicable law, the coverage under the Colonial Penn policy could be stacked.[5]

Bryant claimed that because his wife had not signed the form requesting a reduction in uninsured motorist coverage under the Colonial Penn policy, his request was ineffective in light of our decision in *Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn. 764, and, consequently, he was eligible under that policy for uninsured motorist benefits in the total amount of $200,000 ($100,000 x 2 vehicles).[6] Colonial Penn claimed that Bryant's request for a reduction in the amount of uninsured motorist coverage was binding on him and, therefore, the policy provided for a maximum of $40,000 ($20,000 x 2 vehicles) in uninsured motorist coverage.

The case proceeded to mandatory arbitration pursuant to the Colonial Penn policy. The arbitration panel, with one of the three members dissenting, concluded that: (1) Bryant had sustained damages totaling $180,000; (2) because Bryant had received $25,000 from the tortfeasor, he was entitled to a balance of $155,000 under the uninsured motorist provisions of the applicable policy or policies; (3) in light of our decision in *Pasion*, Bryant's request for a reduction in coverage under the Colonial Penn policy was ineffective because the signature of the second named insured, Judith Bryant, did not appear on the request form and, consequently, Bryant was entitled to $200,000 in uninsured

[4] The accident occurred while Bryant was operating one of the two vehicles insured under the policy issued by Colonial Penn.

[5] "Intrapolicy stacking is the aggregation of the limits of liability for underinsured motorist coverage of each automobile covered under one insurance policy." *Kent* v. *Middlesex Mutual Assurance Co.*, 226 Conn. 427, 428 n.3, 627 A.2d 1319 (1993).

[6] Royal also took this position.

motorist coverage under that policy; and (4) Colonial Penn, as the primary insurer, was obligated to pay Bryant $155,000 in uninsured motorist benefits. Consequently, Bryant's claim against Royal was moot because the uninsured motorist benefits payable to Bryant by Colonial Penn were less than the limits of the uninsured motorist coverage under the Colonial Penn policy.

Colonial Penn appealed from the arbitration award to the trial court.[7] The trial court, relying on our opinion in *Pasion*, affirmed the decision of the arbitrators. On appeal,[8] the Appellate Court reversed the judgment of the trial court, concluding that Bryant's request for a reduction in uninsured motorist coverage under the Colonial Penn policy was binding on Bryant notwithstanding the fact that his wife had not signed the request form. *Colonial Penn Ins. Co. v. Bryant*, 45 Conn. App. 558, 565–56, 696 A.2d 1267 (1997). The Appellate Court determined that, under the circumstances, our holding in *Pasion* was not controlling because, in this case, unlike in *Pasion*, the injured party seeking recovery under the uninsured motorist provisions of the policy was the same insured who had signed the form requesting a reduction in coverage and, thus, Bryant's request was binding on him.[9] Id., 562. The Appellate

---

[7] On appeal to the trial court, Colonial Penn claimed that it was liable under the policy for a total of $15,000 ($40,000 of coverage less the $25,000 paid by the tortfeasor). In a separate appeal from the decision of the arbitration panel, Bryant claimed that if Colonial Penn prevailed on its appeal, then he was entitled to a judgment ordering Royal to pay him $140,000 under its policy ($140,000 from Royal, $25,000 from the tortfeasor, and $15,000 from Colonial Penn, for a total payment of $180,000). In a third appeal, Royal maintained that the arbitration panel properly concluded that Colonial Penn was liable to Bryant under its policy in the amount of $155,000 and, consequently, that Bryant was not entitled to any recovery under the Royal policy. The three appeals were consolidated by the trial court.

[8] Colonial Penn and Bryant filed separate appeals to the Appellate Court, which consolidated the two cases.

[9] The Appellate Court characterized our holding in *Pasion* as follows: "*Pasion* clearly holds that coowners of a car who are named insureds on an automobile liability insurance policy must both sign the authorization

Court also identified what it described as "another more compelling reason . . . to conclude that the coverage reduction form was effective and binding on both [the insureds]"; id.; namely, the retroactive applicability of an amendment to § 38-175c (a) (2); Public Acts 1993, No. 93-297, § 1 (P.A. 93-297, § 1);[10] adopted after our decision in *Pasion. Colonial Penn Ins. Co.* v. *Bryant*, supra, 565. The relevant part of P.A. 93-297, § 1 expressly authorized "*any* named insured" to request and obtain a reduction in uninsured motorist coverage. (Emphasis added.) P.A. 93-297, § 1. In accordance with its determination that Bryant's request for a reduction in uninsured motorist coverage was effective, the Appellate Court remanded the case to the trial court with direction that it render judgment ordering Colonial Penn to pay Bryant $15,000 under its policy and ordering Royal to pay Bryant $140,000 under its policy. *Colonial Penn Ins. Co.* v. *Bryant*, supra, 566.

Royal petitioned for certification to appeal to this court. We granted Royal's petition limited to the following issues: "Did the Appellate Court properly conclude that: (1) Under General Statutes (Rev. to 1989) § 38-175c (a) (2), and *Nationwide Mutual Ins. Co.* v. *Pasion*, [supra] 219 Conn. 764, the signature of the defendant, D. Eugene Bryant, was sufficient to render the reduction

for a reduction in coverage . . . in order for a reduction in coverage to be effective when a passenger in the insureds' car, driven by the nonsigning owner suffers injuries." *Colonial Penn Ins. Co.* v. *Bryant*, supra, 45 Conn. App. 562.

[10] *General Statutes* (Rev. to 1989) § 38-175c (a) (2) was recodified at General Statutes § 38a-336 (a) (2) in the General Statutes as revised to 1991. Section 38a-336 (a) (2) was later amended by P.A. 93-297, § 1. See footnote 13. The legislature subsequently made a technical amendment to § 38a-336 (a) (2) in 1994; see Public Acts, Spec. Sess., May 25, 1994, No. 94-1, § 35; that is not relevant to this appeal.

Because § 38-175c (a) (2) is the provision relevant to this appeal, we hereinafter refer to P.A. 93-297, § 1, as an amendment to § 38-175c (a) (2), despite the intervening recodification of § 38-175c (a) (2) at § 38a-336 (a) (2).

in coverage form effective as to him; and (2) the subsequent amendment to § 38-175c (a) (2), and codified at General Statutes § 38a-336 (a) (2), clarified § 38-175c (a) (2), with retroactive effect?" *Colonial Penn Ins. Co.* v. *Bryant*, 243 Conn. 919, 701 A.2d 340 (1997).

On appeal to this court, Royal[11] contends that this case is controlled by *Pasion* and, consequently, that Bryant's request for a reduction in uninsured motorist coverage was not effective. Royal further asserts that the Appellate Court improperly gave retroactive effect to the amendment to § 38-175c (a) (2) authorizing "any named insured" to obtain a reduction in uninsured motorist coverage. See P.A. 93-297, § 1. Although we disagree with the Appellate Court's retroactive application of the amendment to § 38-175c (a) (2), we agree that our holding in *Pasion* does not control this case and, moreover, that Bryant is bound by his request for a reduction in uninsured motorist coverage.[12] Accordingly, we affirm the judgment of the Appellate Court on that ground.

I

Before turning to the question of whether *Pasion* is applicable in the circumstances of this case, we first address the Appellate Court's conclusion that P.A. 93-297, § 1,[13] which amended § 38-175c (a) (2) by replacing

---

[11] Bryant also seeks reversal of the Appellate Court judgment for the reasons set forth by Royal.

[12] Colonial Penn raises the doctrines of equitable estoppel and unjust enrichment as alternate grounds for affirmance. Because we agree with the Appellate Court that Colonial Penn is entitled to prevail as a matter of statutory interpretation, we do not reach Colonial Penn's alternate equitable claims.

[13] Public Act 93-297, § 1 provides in relevant part: "Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after [July 1, 1984] THE EFFECTIVE DATE OF THIS ACT, shall provide uninsured AND UNDERINSURED motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless [the] *ANY NAMED insured* requests in writing a lesser amount, but not less

the term "the insured" with "any named insured," applies retroactively. We disagree that the amendment has retrospective applicability.

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. See, e.g., *State* v. *Magnano*, 204 Conn. 259, 284, 528 A.2d 760 (1987). In order to determine the legislative intent, we utilize well established rules of statutory construction. 'Our point of departure is General Statutes § 55-3, which states: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect." The "obligations" referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of *presumed* legislative intent that statutes affecting *substantive* rights shall apply prospectively only.' "[14] *Coley* v. *Camden Associates, Inc.*, 243 Conn. 311, 316,

---

than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by [the] *ANY NAMED insured.* NO SUCH WRITTEN REQUEST FOR A LESSER AMOUNT SHALL BE EFFECTIVE UNLESS *ANY NAMED INSURED* HAS SIGNED AN INFORMED CONSENT FORM WHICH SHALL CONTAIN: (A) AN EXPLANATION OF UNINSURED AND UNDERINSURED MOTORIST INSURANCE APPROVED BY THE COMMISSIONER; (B) A LIST OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE OPTIONS AVAILABLE FROM THE INSURER; AND (C) THE PREMIUM COST FOR EACH OF THE COVERAGE OPTIONS AVAILABLE FROM THE INSURER. SUCH INFORMED CONSENT FORM SHALL CONTAIN A HEADING IN TWELVE-POINT TYPE AND SHALL STATE: 'WHEN YOU SIGN THIS FORM, YOU ARE CHOOSING A REDUCED PREMIUM, BUT YOU ARE ALSO CHOOSING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY. IF YOU ARE UNCERTAIN ABOUT HOW THIS DECISION WILL AFFECT YOU, YOU SHOULD GET ADVICE FROM YOUR INSURANCE AGENT OR ANOTHER QUALIFIED ADVISOR.' " (Emphasis added.)

[14] The parties have not disputed that Colonial Penn's substantive rights are affected by the amendatory language.

702 A.2d 1180 (1997). This presumption in favor of prospective applicability, however, may be rebutted "when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." *In re Daniel H.*, 237 Conn. 364, 372, 678 A.2d 462 (1996); accord *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 483–84, 659 A.2d 1188 (1995); *Miano* v. *Thorne*, 218 Conn. 170, 175, 588 A.2d 189 (1991). "Where an amendment is intended to clarify the original intent of an earlier statute, it necessarily has retroactive effect." (Internal quotation marks omitted.) *Toise* v. *Rowe*, 243 Conn. 623, 628, 707 A.2d 25 (1998). We generally look to the statutory language and the pertinent legislative history to ascertain whether the legislature intended that the amendment be given retrospective effect. See, e.g., *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania*, 238 Conn. 285, 290, 679 A.2d 925 (1996); *Rice* v. *Vermilyn Brown, Inc.*, 232 Conn. 780, 787, 657 A.2d 616 (1995).

Colonial Penn concedes, and the Appellate Court recognized,[15] that there is nothing in the legislative history of P.A. 93-297, § 1, to indicate that the legislature intended that the term "any named insured" is to be applied retroactively. Moreover, the statutory language itself contains no suggestion that the legislature intended for the term to be given retrospective effect.

The Appellate Court nevertheless concluded that, in light of the fact that the legislature's decision to change the statutory language from "the insured" to "any named insured" was prompted by our decision in *Pasion*,[16] the legislature must have been clarifying its

---

[15] See *Colonial Penn. Ins. Co.* v. *Bryant*, supra, 45 Conn. App. 563 n.6.

[16] The Appellate Court did not expressly explain its conclusion that the legislature had been prompted by our holding in *Pasion* to replace the term "the insured" with the term "any named insured" in § 38-175c (a) (2). We presume, however, that the Appellate Court's determination was based on the temporal proximity of the release of our decision in *Pasion* in 1991 and the passage of the amendment effecting that linguistic change in 1993, as

original intent and, accordingly, the term "any named insured" should be given retrospective effect. *Colonial Penn Ins. Co.* v. *Bryant, supra,* 45 Conn. App. 564–65. We disagree. Assuming arguendo that the change in language was made in response to our decision in *Pasion*; see footnote 16; that fact alone is insufficient to overcome the presumption against retroactive applicability; indeed, it sheds little, if any, light on whether the legislature intended for the amendment to be applied retroactively. The mere fact that the legislature changes the language of a statutory provision in response to a judicial decision interpreting that provision does not mean that the legislature necessarily intended that the amendatory language be retroactive. See, e.g., *Bayusik* v. *Nationwide Mutual Ins. Co., supra,* 233 Conn. 478 n.2; *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 640–41, 513 A.2d 52 (1986).

Colonial Penn contends that *Reliance Ins. Co.* v. *American Casualty Co. of Reading, Pennsylvania, supra,* 238 Conn. 285, supports its claim that P.A. 93-297, § 1, as it amended subsection (a) (2) of § 38-175c (hereinafter P.A. 93-297, § 1 [a] [2]), should be applied retroactively. In *Reliance Ins. Co.,* we concluded that a different and unrelated part of P.A. 93-297, § 1, later codified at General Statutes § 38a-336 (f),[17] was clarifying legislation and, consequently, had to be given retrospective effect. *Reliance Ins. Co.* v. *American Casualty*

well as the fact that the change addressed the precise issue that we had decided in *Pasion.*

 [17] General Statutes § 38a-336 (f) provides in relevant part: "[A]n employee of a named insured injured while occupying a covered motor vehicle in the course of employment shall be covered by such insured's otherwise applicable uninsured and underinsured motorist coverage." Section 38a-336 (f) was enacted in response to our decision in *CNA Ins. Co.* v. *Colman,* 222 Conn. 769, 610 A.2d 1257 (1992), in which we concluded that due to the exclusive remedy provision of our workers' compensation law; see General Statutes § 31-284 (a); "an employee injured in an automobile accident during the course of his or her employment who had received workers' compensation benefits was barred . . . from recovering against a commercial insur-

*Co. of Reading, Pennsylvania,* supra, 291. In so holding,
however, we observed that the pertinent legislative his-
tory of § 38a-336 (f) provided "uncontroverted support";
id., 290; for the conclusion that the legislature consid-
ered the amendatory language to be "a declaration of
the legislature's *original* intent" rather than a change
in the existing statute. (Emphasis added.) Id., 291. By
contrast, the legislative history of P.A. 93-297, § 1 (a)
(2) contains no indication that the legislature enacted
that provision to clarify, rather than to change, the
existing law.

Furthermore, P.A. 93-297, § 1 (a) (2) provides that no
request for a reduction in uninsured motorist benefits
by "any named insured" shall be effective unless that
insured has signed an informed consent form con-
taining: (1) an explanation of uninsured and underin-
sured motorist coverage; (2) a list of uninsured and
underinsured motorist coverage options available from
the insurer; (3) the premium cost for each of those
coverage options; and (4) a specific admonition, in
twelve-point type, informing the insured of the conse-
quences of choosing reduced coverage and advising the
insured to seek assistance from a qualified advisor if he
or she is uncertain about the effect of such an election.
Neither Bryant nor Royal, however, claims that these
requirements are also to be applied retroactively,[18] even

ance provider on an uninsured motorist insurance policy procured by [his
or her] employer." (Internal quotation marks omitted.) *Reliance Ins. Co.* v.
*American Casualty Co. of Reading, Pennsylvania,* supra, 238 Conn. 287–88.

[18] Indeed, even Colonial Penn does not claim that these four requirements
should be applied retroactively. See *Bayusik* v. *Nationwide Mutual Ins.
Co.,* supra, 233 Conn. 483 (unreasonable to conclude that legislature would
have intended retrospective application of new statutory requirement in
circumstances where party subject to mandate had no notice or opportunity
to comply with requirement). Royal and Bryant do claim, however, that the
four requirements should be given retrospective effect if, and only if, we
conclude, contrary to the primary argument espoused by Royal and Bryant,
that the "any named insured" language of P.A. 93-297, § 1 (a) (2) is to be
given retroactive effect. Royal and Bryant further argue that they would
prevail under such a scenario because the reduction request form provided

though, by their very nature, they are inextricably linked to the statutory change that allows "any named insured" to elect a reduction in uninsured motorist coverage that is binding on all insureds under the policy.[19] We see no reason why the legislature would have intended for certain provisions of P.A. 93-297, § 1 (a) (2) to be given retrospective effect and the other, integrally related provisions of that very same subdivision, to be afforded prospective effect only.

Finally, P.A. 93-297, entitled "An Act Concerning Automobile Insurance Reform," made comprehensive changes to the law of uninsured motorist coverage.[20] Among other things, the act abolished intra-policy and inter-policy stacking; allows an insured to purchase uninsured motorist coverage with limits up to twice that of the policy's bodily injury coverage; allows an insured, in certain circumstances, to recover the highest amount of any one policy under which he or she may be insured; establishes rules prioritizing uninsured motorist benefits due under multiple policies; and creates "underinsured motorist conversion coverage," an optional form of coverage that authorizes an insured to collect for damages sustained up to the limit of the conversion coverage without having such coverage reduced by a third party payment or barred altogether

---

by Colonial Penn and executed by Bryant did not comply with those requirements. We conclude, however, that the provisions of P.A. 93-297, § 1 (a) (2) are not retroactive.

[19] Although the legislative history is silent on the issue, it is apparent that the legislature, when it replaced the term "the insured" with the term "any named insured" in P.A. 93-297, § 1 (a) (2), also sought to ensure that the decision by a named insured to seek a reduction in uninsured motorist coverage would be an informed one by requiring that any such election be made on an informed consent form provided to the insured by the insurer. See J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.10.3, pp. 65–66.

[20] Public Act 93-297 also made other significant changes in the law of automobile insurance, including the abolition of no-fault insurance coverage. See generally P.A. 93-297, §§ 10 through 15, 28.

due to the fact that the tortfeasor's policy equals or exceeds the limit of the insured's conversion coverage. J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.1, pp. 8–9. Thus, the overriding purpose of the act was to change, rather than to clarify, existing law. Because there is no persuasive evidence that the legislature had a different purpose with respect to P.A. 93-297, § 1 (a) (2), we conclude that the Appellate Court was incorrect in holding that the term "any named insured" has retrospective applicability.

## II

We next turn to the question of whether our decision in *Nationwide Mutual Ins. Co.* v. *Pasion,* supra, 219 Conn. 764, controls this case. We conclude that it does not.

In *Pasion,* we determined that, under § 38-175c (a) (2), a request for a reduction in uninsured motorist benefits by Carlos Londono, who, along with his wife, Alexis, was a named insured on an automobile liability policy issued to the Londonos by Nationwide Mutual Insurance Company, was not binding on a third party who was injured in an accident while riding as a passenger in a vehicle covered under the policy. Id., 771. In so holding, we concluded, first, that the requirement that any reduction in uninsured motorist coverage be requested in writing by the "insured" was ambiguous because it was not clear, in the circumstances of that case, whether the term "insured" referred to *any* named insured or to *all* named insureds. Id., 769.

We then reviewed the pertinent legislative history,[21] and observed that "[t]he apparent intent of the legislature in adopting [subdivision] (2) . . . was to assure

---

[21] In particular, we relied on the statements of Senator Wayne Baker, the cochairman of the Committee on Insurance and Real Estate in 1983, when the legislature passed Senate Bill 123, which added subdivision (2) to § 38-

that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing." Id., 770–71. On the basis of our determination regarding the legislative intent, we concluded as follows: "Although the named insureds on the policy involved in [the] case are husband and wife and by virtue of that personal relationship it could be assumed that Alexis Londono was both made aware of the availability of low-cost uninsured motorist coverage and acquiesced in the reduction sought by her husband, such an assumption is far from a certainty. We are even less certain that in situations where the joint owners of an automobile and named insureds on an automobile liability insurance policy are, for example, brother and sister, roommates, or friends, all of whom would be consumers, a conscious choice to reduce uninsured motorist coverage would have been made by all consumers when only one owner/named insured had signed the authorization for reduction in coverage. *To permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by*

175c (a). Senator Baker, "in moving for acceptance of that committee's favorable report and passage of Senate Bill 123, stated that this provision would require each insured who purchases more than the legally required amount of liability insurance [to] receive the same amount of uninsured motorist coverage. The insured would have an opportunity to waive in writing the additional uninsured motorist coverage. This change would increase the consumer's awareness of the value of low-cost uninsured motorist coverage which protects the insured and [his or her] family members. Apparently many drivers purchase $100,000.00 or more of liability coverage but leave their uninsured motorist coverage at the minimum of $20,000-$40,000. [Subdivision] 2 . . . gives such a driver an increased amount of uninsured motorist coverage, unless he [or she] makes a conscious decision not to purchase it." (Internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Pasion,* supra, 219 Conn. 770, quoting 26 S. Proc., Pt. 9, 1983 Sess., p. 3055.

*consumers be an informed one.*" (Emphasis added.) Id., 771.

Relying on our conclusion in *Pasion* that the legislative objective underlying the signature requirement of § 38-175c (a) (2) was to promote informed decisionmaking by purchasers of uninsured motorist coverage; id., 770–71; the Appellate Court reasoned that in view of the fact that Bryant himself had sought the reduction in coverage, his "election was not uninformed"; *Colonial Penn Ins. Co.* v. *Bryant*, supra, 45 Conn. App. 562; and, consequently, Bryant's endorsement and submission of the reduction request form was sufficient to effect a reduction in coverage "[a]s to him." Id. We agree with the conclusion of the Appellate Court. "It is not our practice to construe a statute in a way to thwart its purpose or lead to absurd results; *Sutton* v. *Lopes*, 201 Conn. 115, 121, 513 A.2d 139, cert. denied, 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); or in a way 'that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve.' *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 651, 600 A.2d 1 (1991)." *Doe* v. *Marselle*, 236 Conn. 845, 859–60, 675 A.2d 835 (1996); see also *Coley* v. *Camden Associates, Inc.*, supra, 243 Conn. 319–20. In light of the intent and purpose of the legislature in enacting § 38-175c (a) (2), we see no reason why a named insured who personally has elected a reduction in uninsured motorist coverage under that provision, and who has paid a premium commensurate with that choice, should not be bound by that decision.

This interpretation of § 38-175c (a) (2) is supported by the relevant scholarly commentary. For example, shortly after our decision in *Pasion*, and prior to the Appellate Court's decision in this case, the authors of an authoritative work on Connecticut's uninsured motorist law presaged the scenario presented by this case: "An immediate question posed by the holding of *Pasion* is

whether a rejection of higher limits would be effective if signed by only one of the named insureds if *that* named insured was the one making claim for benefits." (Emphasis in original.) J. Berk & M. Jainchill, supra, § 1.10.2, p. 63. As those commentators noted, "[c]ertainly under [such] circumstances if the court is concerned that appropriate information be disseminated to the named insured so that an 'informed decision' may be made by the named insured, such concern has been satisfied where the injured claimant is the named insured who signed the rejection." Id.[22] Because our holding in *Pasion* was expressly predicated upon the legislative purpose underlying § 38-175c (a) (2), namely, that "consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing"; *Nationwide Mutual Ins. Co.* v. *Pasion*, supra, 219 Conn. 770–71; a named insured who, like Bryant, makes a conscious choice to reduce the uninsured motorist coverage under an automobile liability policy cannot reasonably claim that his or her decision is not binding *as against him or her* simply because another named insured under the policy failed to sign the reduction request form. See *Plaster* v. *State Farm Mutual Automobile Ins. Co.*, 791 P.2d 813, 814 (Okla. 1989) (under Oklahoma statute providing that "[t]he named insured shall have the right

---

[22] See also 2 I. Schermer, Automobile Liability Insurance (3d Ed. 1995) § 36.04 [1], p. 36-8 ("There are a number of possible rejection results where there is more than one insured qualifying as 'the named insured': (1) A rejection by *A* may delete coverage for only *A*; (2) A rejection by *A* may delete coverage for both *A* and *B*; (3) A rejection by *A*, absent a rejection by *B*, has no rejection effect whatever. The mandate of these statutes is that [uninsured motorist] coverage shall be provided 'for the protection of persons insured thereunder.' Consistent with this, an appropriate interpretation of the wording, in light of the ambiguities invited by a multiple-named insured situation, is that a rejection by one named insured, unless he is authorized to act for others, *applies only to himself and not the others.*" [Emphasis added.]).

to reject . . . uninsured motorist coverage in writing," written rejection of such coverage, though not effective as to named insured who failed to sign rejection form, is binding on named insured who signed rejection form). Accordingly, we conclude that the Appellate Court properly reversed the judgment of the trial court affirming the arbitration award.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.