[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
The plaintiff father and defendant mother are the never married parents of a son Kyle born on October 27, 1989. They lived together as a family in Connecticut for approximately eight (8) years until August 12, 1999, when the defendant pressed criminal charges against the plaintiff at CT Page 1431 G.A. 18 in Bantam and filed a restraining order following an incident of alleged domestic violence. The plaintiff denied the charges (breach of peace, threatening, and unlawful restraint) but agreed to enter the Family Violence Program which he successfully completed. While participating in that program and during the pendency of the criminal action, a full protective order prohibiting any contact between him and the defendant or their son was in place. On March 23, 2000, the criminal charges were dismissed and the protective order was dissolved. On April 10, 2000, the plaintiff filed this action for joint custody of Kyle with an Application for First Order of Notice, having learned by then Kyle and his mother were residing in South Carolina.[1] The defendant was served with the custody papers on April 20, 2000.
On June 2, 2000, the defendant filed the instant Motion to Dismiss on the grounds the Uniform Child Custody Jurisdiction Act (Connecticut General Statute § 46b-93[a]) — hereinafter UCCJA — and the Parental Kidnaping Prevention Act, 28 United States Code Annotated 1738A — hereinafter PKPA — deprive this court of subject matter jurisdiction because the minor child had then been residing with the defendant in the state of South Carolina for seven and one-half (7 1/2) months when this proceeding was commenced and South Carolina was therefore the "home state" as that term is defined under both the applicable federal and state laws. On June 7, 2000, the plaintiff filed an objection and supporting memorandum of law in which he argues this court has jurisdiction under Connecticut General Statute § 46b-93.
It is appropriate to note the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) became effective on July 1, 2000. That legislation would govern this action were it not for the fact that all of the events in this case occurred prior to that date. Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. State v. Magnano, 204 Conn. 259, 284
(1987). Connecticut General Statute § 55-3 provides, "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligations on any person or corporation, shall be construed to have a retrospective effect." "The `obligations' referred to in the statute are those of substantive law. . . .Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." Colonial Penn Ins. Co. v. Bryant, 245 Conn. 710, 718-19
(1998).
Custody of a child is clearly a substantive right. The substantive CT Page 1432 rights of parties are fixed on the date upon which the cause of action accrues. This cause of action "accrued" no later than March 23, 2000, when the plaintiff's criminal charges were dismissed and the protective order preventing him from seeing Kyle was dissolved. Nothing in the UCCJEA states it is to be given retrspective application; to the contrary, Section 4 of the UCCJEA states, "This act shall take effect July 1, 2000." At a recent hearing, the parties agreed the UCCJA was applicable (The defendant was not present but was represented by counsel; the plaintiff, also represented by counsel, was present.). Connecticut General Statutes § 46b-90 et. seq. are this state's enactment of the UCCJA.
The plaintiff relies on Connecticut General Statute § 46b-93 which reads in pertinent part:
 (a) A court of this state shall have jurisdiction to make a child custody determination if . . .
 (2) it is in the best interest of the child that a court of this state assume jurisdiction because
 (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships. . . .
The plaintiff asserts this state has jurisdiction under this provision because Kyle spent the first eight (8) years of his life here, attended school here and was doing well academically, has a cousin, aunt, and grandmother in Connecticut, made friends in this state and had participated in athletic and scouting activities here, and because he (the plaintiff) and the defendant continue to own real estate here. He also makes strong allegations that the defendant's lifestyle in South Carolina is reprehensible (i.e., that her current boyfriend with whom she lives has done prison time on a narcotics charge, that she was never at home before 9:30 p.m. and left Kyle with "known felons," and that there is an outstanding warrant for her arrest in California for sale and possession of a controlled substance. As presented, those allegations are unsubstantiated hearsay.
The plaintiff also relies on Connecticut General Statute § 46b-91 which provides one of the general purposes of the UCCJA is to assure CT Page 1433 custody litigation occurs in the state where the child and his family have the closest connection and where there is significant evidence of the child's social history as well as to deter abductions and other unilateral removals of children to achieve custody awards. Connecticut General Statute § 46b-91(a)(3), (4), and (5). He argues the defendant mother wrongfully removed Kyle from Connecticut and that her conduct should not be sanctioned by this court. He notes the defendant has not pursued an action for custody in South Carolina and thus the plaintiff has not had the opportunity to contest South Carolina's jurisdiction in that forum.[2]
The defendant counters her motive in fleeing Connecticut was her fear for her own and Kyle's personal safety and points to the violence involved in the domestic event which gave rise to the plaintiff's arrest, the protective order, and the court ordered participation by the plaintiff in an anger management program. She correctly asserts the plaintiff's allegations with regard to the unsavory nature of the defendant's present lifestyle, while relevant to a custody determination, are not pertinent to the only issue before this court — whether this state or South Carolina has subject matter jurisdiction. In the defendant's supplemental affidavit of June 23, 2000, she denies there is an outstanding warrant[3] though she admits to an arrest in California in 1991 that did not result in a conviction.[4] She stated Kyle, then ten and one-half (10 1/2) years old, was doing well in school, that he participated in sports and scouting and church activities, and that she and Kyle lived alone.
Both the PKPA and the UCCJA promote the deterrence of the unilateral removal of children for the purpose of securing custody. 28 U.S.C. § 1738A
(ii); Connecticut General Statute § 46b-91(a)(5). They differ, however, on the jurisdictional question. The UCCJA provides for home state jurisdiction but alternatively provides jurisdiction may be premised upon the significant connection/substantial evidence test. Connecticut General Statute § 46b-93. The PKPA expresses a preference for home state jurisdiction in stating there is jurisdiction under the significant connection/substantial evidence test only if the child has no home state. 28 U.S.C. § 1738A(c)(1) and (2)(B)(i). The enactment by Congress of the PKPA in 1980 was a response to differing state court interpretations of the UCCJA and the failure of that legislation to resolve inter-state and international custody disputes; its aim was to establish national standards for determining subject matter jurisdiction. Numerous state courts have concluded that, where there is a conflict between the PKPA and the UCCJA, the language of the PKPA indicates Congress intended to preempt custody jurisdiction and those courts have accorded preference to the PKPA and the home state rule under CT Page 1434 the supremacy clause of our federal constitution (U.S. Const., Art. VI). See, e.g., cases cited in Doucette v. Murray, 1997 WL 381389 (Conn.Super. July 1, 1997).
Both the PKPA and the UCCJA define "home state" as the state in which a child has lived with a parent or person acting as a parent "for at least six consecutive months" immediately preceding initiation of the custody matter. 28 U.S.C. § 1738A(b)(4); Connecticut General Statute § 46b-92(6). Since Kyle had been residing in South Carolina for seven and one-half months when this litigation was commenced, South Carolina was then his home state. It is so that, by the time the protective order was dissolved on March 23, 2000, Kyle had already been living in South Carolina for over six months and that state had become his home state. Yet, the plaintiff cites no authority for his argument the no contact order prevented his suing the defendant. The court is unpersuaded and finds it unlikely the order would have been read so broadly as to prohibit service of process on the defendant. The affidavits do not, however, establish when precisely the plaintiff learned the defendant's address.
Though there have been two hearings in this matter, no evidence was elicited at either hearing and, in the absence of a plenary hearing, this court cannot find the defendant's purpose in fleeing to South Carolina with Kyle was to secure a custody award particularly since no custody action has ever been brought in that state. She has asserted she fled for her physical safety and references the plaintiff's domestic violence (which allegations he claims she manufactured so that he would be arrested and restrained by a no contact order — all for the purpose of facilitating her flight). It may be the defendant has not brought suit in South Carolina because she mistakenly believed South Carolina law conferred sole custody upon her by virtue of her residence there.[5]
Though the defendant was present in court in June, 2000, neither counsel elicited her testimony though her return to South Carolina was anticipated.
The plaintiff's reply brief cites numerous cases to support the father's position this state may exercise jurisdiction because Kyle has a significant connection to this state and there is here substantial evidence relevant to a custody determination. The defendant argues those cases are not applicable since they arise in the context of a request to modify a prior Connecticut custody order and that, under the PKPA, the jurisdictional standard for "original" jurisdiction is different from the standard for "continuing" jurisdiction. What the defendant neglects to mention is that the continuing jurisdiction standard imposed by28 U.S.C. § 1738A(d) incorporates the standard it imposes for original jurisdiction. It reads:
CT Page 1435 The jurisdiction of a court of a state which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such state remains the residence of the child or of any contestant.
Subsection (c)(1) is the original custody jurisdiction provision; it provides there is original custody jurisdiction in this state if the law of this state confers jurisdiction[6] and one of a number of enumerated conditions is met. In the instant circumstances, even assuming arguendo the UCCJA confers jurisdiction, no one of the conditions recited in28 U.S.C. § 1738A(c)(2) pertain and, thus, there is no jurisdiction here under the PKPA.
While the defendant relies upon the PKPA and its preference for the home state rule in establishing jurisdiction, this court is mindful of the stated purpose of deterring abductions. If it cannot be said with certainty the defendant fled to secure a custody award (though, for reasons earlier stated, that may well be so), it cannot be denied that she unilaterally removed Kyle from Connecticut at a time when she knew the plaintiff was precluded from communicating with her and that she kept secret from the plaintiff her location so that, even when the protective order had been dissolved, the plaintiff father would presumably not be able to exercise his right of visitation. The inequity of the defendant's reliance on the PKPA is obvious when one considers the defendant has violated the intent of the PKPA and blatantly acted to frustrate its conduct. If the plaintiff's claimed domestic violence is reprehensible — and it is — so, too, is the defendant's egregious conduct. There is reprehensible conduct claimed by both parties. If, as the defendant claims, the plaintiff cannot use the PKPA as a sword because South Carolina is the child's home state, the defendant ought not be permitted to use it as a shield against conduct which is precisely the conduct the PKPA is designed to prevent. Under the circumstances of this case, the bright line test of the home state rule ought not be employed to deprive this state of jurisdiction otherwise conferred. In Perez v.Perez, 212 Conn. 63 (1989), the trial court concluded — and our Supreme Court did not disturb the finding — a parent's removal of a child from this state for eight months constituted a "temporary absence" which, under both 28 U.S.C. § 1738A(b)(4) and Connecticut General Statute § 46b-92(5), is counted as part of the six month period. Perez, supra, 212 Conn. at 70 (1989). Were it not for this defendant's wrongful conduct in fleeing this state with young Kyle, Connecticut would continue to be the child's home state.
Pertinent to the defendant's claim of domestic violence is a recently CT Page 1436 enacted amendment to the PKPA; it mandates the Attorney General to conduct a study of the effect of the PKPA and the UCCJEA on custody cases in which domestic violence is a factor and to examine the sufficiency of defenses to parental abduction charges and to assess the burden and risks encountered by victims of domestic violence arising from the jurisdictional requirements of the PKPA. 114 Stat. 1464, 1513; Section 1303(a) and (b) of Pub.L. 106-386. Two hundred thousand dollars has been appropriated for fiscal year 2001 for this study. 114 Stat. 1464, 1513; Section 1303(c).
Under the UCCJA, there is jurisdiction in this state based upon Connecticut General Statute § 46b-93. Kyle spent the first eight years of his life here. He went to school here for three years at least — perhaps four years. He was active in the same kind of athletic and scouting activities it is said he now engages in in South Carolina but he was engaged in those activities for a considerably longer period in this state. His childhood friendships endured longer in Connecticut. He has extended family here. His academic and medical records available in this state are likely more telling of his scholastic and health history than those available in South Carolina. There is a significant connection with this state and there is substantial evidence here concerning his personal relationships and his present and future care. Further, despite this action pending in this state for many months, the defendant has not yet brought an action for custody in South Carolina and the plaintiff therefore has no forum there. There is jurisdiction here and the defendant can contest the plaintiff's action (in which he requests joint legal custody and to exercise visitation rights) in this state.
This court cannot elevate the home state provision of the PKPA to deny this state jurisdiction under the circumstances here presented since to do so would be to violate both the spirit and the expressly stated purpose of both the PKPA and the UCCJA and would only encourage parents to flee with children and keep secret their whereabouts for the requisite six month period in order to deprive the original state of subject matter jurisdiction. The defendant shall have her opportunity to contest custody in this state and to raise all appropriate defenses here. Each party shall have the opportunity to present the evidence necessary for a thoughtful custody determination. Any other resolution of the instant motion would be to ignore what is the overriding consideration of both the federal and state legislation — which is for courts to do that which is in the child's — as opposed to the parents' — best interest.
The motion to dismiss is denied.
B. J. SHEEDY, J. CT Page 1437